(43 App. Div. 369.)

BROWNELL v. EHRICH et al.

(Supreme Court, Appellate Division, Second Department. October 3, 1899.)

1. MASTER AND SERVANT—ACTION FOR WRONGFUL DISCHARGE—QUESTIONS FOR
     JURY.
        Where, in an action for breach of contract of employment in dischar-
     ging plaintiff, defendant pleads plaintiff's failure to devote his entire at-
     tention to the business, and the evidence is contradictory as to whether
     plaintiff's absence from the place of business was in connection with
     defendant's business, it is proper to submit the question of plaintiff's
     neglect to the jury.
2. SAME—GROUNDS OF DISCHARGE—IMMORAL CHARACTER.
        In an action by an employé for breach of contract of his employer in
     discharging him, defendant cannot justify his action by showing that
     plaintiff conducted himself immorally, without evidence that his business
     was, or was likely to be, injuriously affected thereby.
3. SAME—ENGAGING IN OTHER BUSINESS.
        In an action by an employé for breach of contract of his employer in
     discharging him, evidence that plaintiff engaged in other business is not
     sufficient defense, where the contract does not exclude him from engaging
     in other business, and such business does not interfere with the employer's
     business.

Appeal from trial term, Kings county.

Action by Ezra J. Brownell against Samuel W. Ehrich and an-
other to recover for breach of contract. From a judgment for plain-
tiff and an order denying defendants' motion for a new trial, they
appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT,
HATCH, and WOODWARD, JJ.

Thomas D. Adams, for appellants.

J. Aspinwall Hodge, Jr. (Edward H. Carpenter, on the brief), for
respondent.

GOODRICH, P. J. In April, 1894, the parties to this action entered
into a written contract whereby the plaintiff was to become buyer

and manager of the household furnishing and china department of the defendants, who were proprietors of a large department store in the then city of New York. The term of the contract was for three years from May 1, 1894, and the salary was to be $4,500 the first, $5,-000 the second, and $5,500 during the third year. The plaintiff entered upon his service and continued therein until July 6, 1896, when he was discharged by the defendants. The answer sets up a breach of the plaintiff's duty, chiefly in two particulars: First, in a failure of the plaintiff to devote his entire time and attention to the business of the defendants during the business hours of the day (that is, from 8 o'clock in the morning to 6 in the evening), and during such other time as should be necessary for the business of the defendants; and, secondly, that he engaged in the bicycle business, which became a part of the defendants' business, during a portion of the time of his employment. The plaintiff had a verdict, and the defendants appeal from the judgment entered thereon.

As to the first defense, that the plaintiff failed to devote his entire attention to the business during business hours, there was evidence tending to show that it was a part of the plaintiff's duty to purchase goods for his department, and that the proper discharge of such duty required his attention and an examination of goods at places other than the store of the defendants. The defendants claim that in the spring of 1896 they ascertained that the plaintiff was absenting himself very much from the store, and that they employed detectives to follow him. The detectives did this for several weeks, and reported that he was the in the habit of visiting the house of a woman living on Thirty-First street, about a half mile from the defendants' store, and that he remained there sometimes one and at other times two hours, during the business part of the day. They also reported that he accompanied the same woman to restaurants to lunch, where he remained sometimes one and at other times two hours, and that he was in company with her at down-town restaurants during business hours for periods of two or three hours. The plaintiff was not asked by either counsel whether he visited this woman for an immoral purpose. He does deny that he spent with her the portion of business hours to which the detectives testified. He also admitted spending considerable time with men in down-town restaurants during business hours, but alleged that this was more or less in connection with the business of the defendants, and did not interfere therewith. The woman corroborates the defendants' claim as to the visits of the plaintiff at her home. This evidence raised a conflict of evidence necessarily and properly to be submitted to the jury. The court, after analyzing the testimony upon this subject, distinctly submitted to the jury the question whether the plaintiff improperly neglected the business of the defendants, saying: .

"Although the evidence in this case may satisfy you that his relations with Mrs. Edwards were immoral, the mere fact of immorality on his part—illicit relations, if there were such, with this woman—would not justify Ehrich Bros. in discharging him, if during business hours, from eight to six, or eight to five, he faithfully, intelligently, and honestly did his work at their place of business, up to the letter, fully meeting the spirit and essence of the con-

tract. But the defendants claim, as I have stated, that this furnishes a reason for his absence from their place of business. I leave it entirely to you to say how long he was away, when he was away, and what he did when he was away,—whether he was attending to their business or attending to his own."

The defendants excepted to this portion of the charge, as follows:

"Mr. Adams: I desire to except to that portion of your honor's charge in which you state: 'If the relations were immoral, the mere fact of immorality on his part—the illicit relations, if any there were—would not justify him in discharging the plaintiff.'"

The court carefully limited this portion of the request by saying:

"If this man was guilty of what is commonly known as 'immorality' with the witness who has been produced here, or any other woman, and, notwithstanding that immorality, he was faithful and lived up to the letter and the spirit of his contract, and honestly served his master during business hours to the best of his ability, the mere fact that he was immoral to that extent would not justify his discharge."

If the evidence disclosed that the plaintiff's immorality was known to, and the subject of comment among, the employés of the defendants, to an extent calculated to impair his usefulness among them, or in any way to injure the business of the defendants, the latter would have been justified in discharging him, but there is no evidence of any such fact which requires the reversal of the judgment. In Preyer v. Bidwell, 11 N. Y. Supp. 71, the court of common pleas of the city of New York, at general term, affirmed a judgment following a trial at which the court said:

"But you will, I think, readily understand that, as to this lascivious conduct, it of itself would not disqualify a man from being a good business man, but, if it was displayed so as to be an injury or detriment to the business of the employer, that would be a good ground for discharge; and for that reason I have declined to charge distinctly what I have been requested to charge, otherwise than I have charged."

The court refused defendant's request for a charge that:

"Defendant has a right to expect the plaintiff to have and maintain a good moral character, and to conduct himself in a manner consistent with good morals, while in the course of his employment; and, if the plaintiff did not so conduct himself, the discharge was justified, and the verdict must be for the defendant."

Through all the authorities runs the principle that immorality or misconduct which will justify the discharge of an employé must be prejudicial to the master's interests. Thus, Wood, Mast. & Serv. § 109, says:

"The question as to whether particular misconduct is such as to justify a dismissal of the servant does not depend so much upon the moral turpitude, willfulness, or habitual character of the act, as upon its effect upon the master's business, or its inconsistency with the nature of the engagement; and that in all cases is a question of fact for the jury to say whether the particular misconduct in a particular case is sufficient."

It is to be borne in mind that there was not the slightest evidence that the immorality of the plaintiff in any way affected the defendants' business, and it does not appear that this was stated as the ground of his discharge when that occurred, although that would not have been necessary or essential. It would seem that the testi-

mony on this subject was introduced for the purpose of showing an attendant neglect of the business of the defendants, but the jury's verdict may have been based on the belief that the defendants' business was in no way affected by such neglect. We do not mean to hold that there are no positions where moral turpitude alone would not justify the discharge of an employé; as, for instance, where such employé was brought into personal or confidential relations or associations with the members of his employer's household, or where the character of the employé was of vital importance to the proper discharge of his duty. Even in an employment of this character we are clear that, if a superintendent or foreman used his position to debauch or corrupt the morals of a female employé, his discharge by the master would be not only justifiable, but an imperative duty. But we have found no case in this state which goes to the extent of saying that a master can discharge a business servant because he maintains immoral relations with a woman, without evidence tending to show that the master's business was, or was likely to be, injuriously affected thereby.

As to the second defense, we do not think that the bicycle incident is entitled to any grave consideration. When the plaintiff entered the employ of the defendants the firm was not engaged in the sale of bicycles, nor did it enter upon such sale until the spring of 1896. Some time previously thereto the plaintiff had formed a corporation for the sale of bicycles in Brooklyn, and, so long as this did not interfere with the business of the defendants, it was lawful for the plaintiff to engage in it, as the contract did not exclude him from engaging in other business than that of the defendants; and we do not think that the testimony discloses any such interference. This, however, also was a proper question to be, and it was, fairly submitted to the jury.

We think the judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur.