### 5846. WADE *v.* HEFNER.

1. In an action arising ex contractu, the defendant is not entitled to open and close the argument, unless the admissions in his answer or plea are such as to concede a prima facie case for the plaintiff. *Crankshaw* v. *Schweizer Mfg. Co.,* 1 *Ga. App.* 363 (3), 367 (58 S. E. 222). In this case the admissions in the answer were not sufficient to shift the burden of proof from the plaintiff to the defendant.
2. An employee owes to his employer respectful and decent behavior, and disrespectful and abusive language constitutes sufficient ground for his discharge and the rescission of the contract of employment. But where in an action based on an alleged wrongful discharge the employer seeks to justify the discharge on this ground, it is for the jury to determine whether the language used was sufficiently disrespectful and abusive to authorize the discharge and the termination of the contract, and whether there had been sufficient provocation, if any, by the employer, to justify or excuse the use of such language.
3. The other grounds of the motion for a new trial are without merit.

DECIDED MARCH 18, 1915.

Appeal; from Habersham superior court—Judge J. B. Jones. August 16, 1911.

*J. L. Perkins, J. C. Edwards & Sons,* for plaintiff in error.
*Sam Kinzey,* contra.

BROYLES, J. E. C. Hefner brought suit against I. C. Wade for

damages for wrongful discharge, alleging that he had a verbal contract with the defendant to work in his peach-orchard from January 30, 1909, until January 1, 1910, and that the defendant discharged him without any cause on June 7, 1909. The defendant testified that he discharged Hefner because Hefner came up to him and began to curse and abuse him, and called him "the damnedest meanest man he ever saw." The plaintiff admitted that he went to the defendant on the defendant's own premises, and told the defendant that he was "the grandest rascal he had ever worked for;" and he testified that when this was said the defendant had a walking-stick in his hand, appeared to be wrought up, and threw the stick up as though intending to strike him, and "I told him to shoot his dog-water, that I was not afraid of him." "I went to see him because he found a bull in his pasture and insulted my wife about it, and I found her crying."

1. Counsel for the plaintiff in error contend that the court erred in refusing to allow the defendant to take the burden and open and conclude the argument before the jury, as the admissions in the defendant's plea were sufficient to concede a prima facie case for the plaintiff; and they cite *Widincamp* v. *Widincamp,* 135 *Ga.* 644 (70 S. E. 566), *Atlanta Suburban Land Corporation* v. *Austin,* 122 *Ga.* 374 (50 S. E. 124), and 9 Cyc. 762. In the two cases cited, the admissions in the defendant's plea were clearly sufficient to make a prima facie case for the plaintiff, and thus the burden was shifted from the plaintiff to the defendant. In this case, however, it is only necessary to read the defendant's plea to see that the admissions therein do not concede a prima facie case for the plaintiff. The plea is as follows: "And now comes the defendant in the above-stated cause of action, at this the appearance term, and for plea and answer thereto says: (1) That while plaintiff did work for him (the defendant), he has fully paid plaintiff for all his services and is now indebted to him in no sum or amount whatever; (2) That defendant is and was fully justified in his discharge of plaintiff, and in so doing violated no contract or agreement whatever with plaintiff. (3) Defendant denies each and every other allegation of plaintiff's suit, denying all the indebtedness as itemized and alleged against him by plaintiff. (4) Plaintiff sought to get defendant's hands to quit work with him, thus damaging defendant in excess of demands of plaintiff in this suit,

to wit, loss in this respect as much as $5 or $10, also loss by taking care of a bull, $5. (5) Wherefore defendant prays judgment for costs of suit and for damages as alleged." "And now comes defendant and shows that the plaintiff could have gotten as much or more wages since his discharge, and will ever pray and plead the same as a set-off in this suit."

2. While a servant owes to his master respectful and decent behavior, and while disrespectful and abusive language constitutes sufficient ground for his discharge, it is for the jury to say whether the language used was sufficiently disrespectful and insulting to authorize the discharge and the termination of the contract. And where there is evidence of previous provocation on the part of the master, it is for the jury to decide whether or not such provocation was sufficient to justify or excuse the use of the abusive language. "The weight and sufficiency of the evidence in an action for wrongful discharge is a question dependent upon the facts and circumstances of the particular case, and is one wholly for the determination of the jury, whose finding will not be disturbed unless manifestly erroneous." 26 Cyc. 1009. In 1 Labatt, Master & Servant (2d ed.), 932, it is said: "As the various kinds of language and behavior which constitute a breach of the duty now under discussion are described by terms which are not susceptible of any precise legal definition, the question whether, in any given instance, a breach was committed is essentially one of fact, and therefore primarily for the jury;" and in note 7 on the same page it is stated that this rule was taken for granted in all of the cases cited in the notes to section 299, which is headed—"Duty [of the servant] to refrain from insolent, offensive, and threatening words and behavior." In Hamlin v. Race, 78 Ill. 422, it was held that "The question whether or not the servant was insolent to his employer was a matter of fact for the determination of the jury."

Certainly, in the case at bar, the expression "shoot your dogwater," used by the servant to his master, is "not susceptible of any precise legal definition," and this court is unable to say what it does mean. We have searched "Words & Phrases," the dictionaries and the encyclopædias, but with no success. See also *Echols v. Fleming*, 58 *Ga.* 156; *Cason* v. *Tye*, 9 *Ga. App.* 325 (71 S. E. 593).

The learned counsel for the plaintiff in error cite *Henderson* v.

*Stiles,* 14 *Ga.* 135; but the facts in that case were quite different from those in the case at bar, as shown by the following language of Judge Nisbet, who wrote the opinion: "It appears from this record that the plaintiff, *without provocation* [italics ours], fell aboard of Mr. Stiles, being on his own premises, and brutally beat him with the barrel of his gun, even to the endangerment of limb and life, and that this assault and battery preceded any breach of the contract by Stiles, if, indeed, any was ever made or attempted, which we do not by any means assert." The same counsel cite 26 Cyc. 990, 991, 992, where it is said: "While it has been held that to justify the discharge of a servant he must have been guilty of some moral misconduct, pecuniary or otherwise, wilful disobedience, or habitual neglect, the better view seems to be that any miscon- duct, inconsistent with the relation of master and servant, will justify the master in terminating the contract of service at any time." The only Georgia case there cited to sustain this doctrine is *Newman* v. *Reagan,* 65 *Ga.* 513, where the jury returned a ver- dict in favor of a servant for a wrongful discharge, and upon an appeal to the Supreme Court, on the ground that the verdict was contrary to law and the evidence, it was held that where an em- ployee fails to obey orders or comply with his contract, is incom- petent for the position he has assumed, or his conduct is such that he is injuring the business of his employer by selling at a loss, or by driving off the employer's customers, he can not, in case of his discharge, recover for the time he did not serve; and whatever dam- age the employer has sustained he can recoup against wages due the employee. "Such conduct would authorize the discharge of the employee. The jury must determine whether his discharge was really caused thereby, or whether it resulted from the dullness of business." And Justice Hawkins, who wrote the opinion, said: "We think the evidence in the case would have justified a verdict for either the plaintiff or defendant, and for that reason a verdict will not be disturbed by this court on that ground. This court has so often held that it is the province of the jury to decide upon the credibility and weight of evidence, and also that this court will not disturb the verdict of a jury when there is sufficient evidence to support it, that it ought to be regarded by the profession as a settled question." Another case cited in 26 Cyc. in this connection, is Darden *v.* Nolan, 4 La. Ann. 374, where a servant was discharged

for using abusive and insulting language to his employer, and a recovery by the servant was set aside by the Supreme Court of Louisiana; but that case is distinguished from the one at bar by the following words in the opinion: "The evidence shows that the plaintiff used the most grossly abusive and insulting language to the defendant, accompanied with a threatening manner, which *was not provoked* by the latter, as far as appears from the record" (italics ours). In the case before us the plaintiff testified that the defendant "got as mad as a wet hen" because he found a bull in his pasture, and abused the plaintiff's wife about it, to such an extent that shortly afterwards she was found crying by the plaintiff, and that this action of the defendant was what provoked him (the plaintiff) to seek out the defendant and to apply to him the abusive language. This testimony of the plaintiff was uncontradicted by the defendant or any other witness in the case. In our opinion it was clearly a matter for the jury to decide whether or not this alleged provocation on the part of the employer justified or excused the use of the abusive language of the employee.

No error of law appears; and while the evidence in support of the verdict is weak and unsatisfactory, and while the language used by the employee to his employer was extremely disrespectful and insulting, there being evidence of some provocation therefor on the part of the employer, and the jury having passed upon the case, and their verdict having been approved by the trial judge, his judgment overruling the motion for a new trial is    *Affirmed.*