### FARMER v. FIRST TRUST CO.

### In re MILWAUKEE MOTOR CO.

(Circuit Court of Appeals, Seventh Circuit.   September 4, 1917.)

### No. 2472.

1. MASTER AND SERVANT ⊚⇒30(3)—CONTRACTS OF EMPLOYMENT—GROUNDS FOR DISCHARGE.

While it is a general rule that one employed in a supervisory capacity is not so strictly accountable to the employer for his time as is a clerk or workman, the applicability of the rule depends upon the circumstances of the particular case, and the voluntary and unnecessary absence from duty of a superintendent, at a time when his presence is vitally necessary to the success of the employer's business, is ground for his discharge.

2. MASTER AND SERVANT ⊚⇒32—DISCHARGE OF EMPLOYÉ—STATEMENT OF CAUSE.

Even if the cause assigned for dismissal of an employé was not in itself sufficient, the dismissal is justified if it appears that sufficient cause therefor did in fact exist.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

In the matter of the Milwaukee Motor Company, bankrupt; First Trust Company, trustee.   Appeal by A. J. Farmer from an order disallowing his claim.   Affirmed.

Appellant Farmer, a mechanical engineer, was employed as superintendent of the bankrupt's gas engine shops at Milwaukee. After serving about two months in such capacity, a contract for a year's service, beginning August 1, 1912, was entered into, under which Farmer was to superintend and manage the shops, devoting his entire time thereto, and to receive for such service a salary of $6,500 and a bonus of $3 per engine if, with the equipment of the factory, and such further equipment as had theretofore been specified by Farmer, 3,000 engines were produced within the year at prescribed factory costs, to fill contracts therefor which were extant. Provision was made for renewal of the contract for another year if Farmer "has made good his guaranty to make the said 3,000 engines now sold within this contract year, and within the above schedule cost of manufacture."

Under date of July 26th, the bankrupt had entered into a contract with the Imperial Automobile Company of Jackson, Mich., to supply it 2,200 motors, with option for 1,000 more, during the entire year; the contracted deliveries for 1912 being August 100, September 130, October 260, November 260, and December 300.

The work of installing the new equipment was being carried on, and the manufacture of the engines proceeded, but in the months indicated only 190 engines were completed for delivery, and some, if not all of these, proved unsatisfactory. Demands for overdue deliveries were being made, as well as complaints respecting engines delivered. In response to the complaints the

bankrupt's vice president on December 18th went to Jackson, taking Farmer with him. The next day Farmer started back home by way of Chicago. The vice president urged him to be back to the shops as soon as possible, and Farmer said he would reach Milwaukee the same day, as he intended stopping at Chicago but a short time to buy his wife a Christmas present. Upon reaching Chicago he did not return to Milwaukee, but remained at Chicago until the 22d, indulging himself in diversion strictly personal. Coming to Milwaukee on the 22d, he did not go to the shop because of a severe cold he had contracted. On the 24th he was dismissed from his employment. Within six months thereafter the company became bankrupt. Farmer filed his claim for $13,062.45 for damage accruing to him by reason of his alleged unlawful dismissal.

The referee found that the absence from duty was in no manner on account of his own necessities or of the employer's business, but because of Farmer's own self-indulgence during that time. He found further that this absence and the failure to return to his employment was not such a breach of his contract of employment as to justify his dismissal, and that his conduct during such time was not such as was inconsistent with the nature of his employment, or rendered him unfit to continue it. He allowed the claim to the extent of $3,-862.50 for the balance of the full year's salary, and disallowed it for the rest of the claim, which was based upon the bonus. Both parties petitioned for review, and the District Court reversed the referee's order of allowance, and directed that the entire claim be disallowed. Farmer appeals.

Lyman G. Wheeler, of Milwaukee, Wis., for appellant.
Arthur W. Fairchild, of Milwaukee, Wis., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] It is maintained for appellant that one serving in a supervisory capacity is not so strictly accountable to the employer for his time as is a clerk or a workman, and that Farmer's absence of two or three days without permission was not such a breach of the contract as warranted its termination. The legal proposition, as generally stated, is sustained by the authorities cited from Wisconsin, the state where this contract was made, as well as elsewhere. Moody v. Streissguth Clothing Co., 96 Wis. 202, 71 N. W. 99; Schumaker v. Heinemann et al., 99 Wis. 251, 74 N. W. 785; Loos v. Walter Brewing Co., 145 Wis. 1, 129 N. W. 645, 140 Am. St. Rep. 1052; Green v. Somers, 163 Wis. 96, 157 N. W. 529; Beach on Modern Law of Contracts, § 584.

But the applicability of such rule must depend on the facts of particular cases. Conditions may be readily imagined where in a well-organized, smoothly running, and successful business a day's or even a month's absence of a general superintendent, who has the business well in hand, might be wholly consistent with its continued uneventful and successful operation. Upon the other hand, the business may be in condition so critical that a single hour's willful absence of such an officer at such a time might well be regarded as rank disloyalty and gross insubordination. Nearly five months of the new contract period had passed. Instead of deliveries of 1,050 engines required during that time under a single contract, to say nothing of other outstanding contracts, but 190 all told had in fact been delivered, and these more or less defective. Purchasers were clamoring for deliveries and complaining of defects in those delivered; materials were delayed; there

was more or less trouble in the shop; and things generally seemed to be going awry. Added to this, the new equipment was in process of installation; old machines were being moved and changed; and the shop was undergoing radical rearrangement and reconstruction. The responsible head was Farmer. He had various foremen under him, but he was the only mechanical engineer connected with the plant, and while in authority it was upon his designing, planning, and direction that success or failure depended. This high-priced man faced obstacles, to surmount which would manifestly require his fullest capacity and undivided attention. Surely this was not a situation wherein the man at the helm might needlessly and with impunity abandon his post that he may tread "the primrose path of dalliance."

It is urged that the evidence shows no harm to the business resulting from these days of absence of its mechanical head. The sentry sleeping at his post is not less derelict in duty if, haply, disaster does not follow; nor is the responsible employé's disloyalty or insubordination measured by the extent of the resultant harm to the employer, nor minimized if none happens to follow.

It is insisted that even if, while at Chicago, appellant did transgress the canons of propriety and right living, this of itself would not warrant his dismissal. The authorities support the proposition that if the transgression does not injure the employer, nor unfit the transgressor for the employment, termination of a contract of employment for such cause alone would not be justified. Wood, Master & Servant, § 110; Child v. Boyd, etc., Co., 175 Mass. 493, 56 N. E. 608; Brownell v. Ehrich, 43 App. Div. 369, 60 N. Y. Supp. 112. But the dismissal here is not justified on the ground of the employé's personal transgression at Chicago. The fact of the transgression affords evidence that the absence from duty was not necessitated by any of such causes as might excuse it, and emphasizes the conclusion that it was willful and deliberate, and under conditions which gave to the conduct strong color of disloyalty and insubordination.

[2] Nor is it material that at the time of the dismissal the employer did not know of his conduct at Chicago, and did not assign it as a cause of dismissal. Even if the cause assigned for dismissal was not in itself sufficient, if it appears that sufficient cause therefor did in fact exist, the dismissal was justified. Wood, Master & Servant, § 121; Labatt's Master & Servant, § 189; Carpenter Steel Co. v. Norcross, 204 Fed. 537, 123 C. C. A. 63, Ann. Cas. 1916A, 1035; Thomas v. Beaver Dam Mfg. Co., 157 Wis. 427, 147 N. W. 364, Ann. Cas. 1916A, 1020; Loos v. Walter Brewing Co., 145 Wis. 1, 129 N. W. 645, 140 Am. St. Rep. 1052; Von Heyne v. Tompkins, 89 Minn. 77, 93 N. W. 901, 5 L. R. A. (N. S.) 524. But the employer did then know the desperate condition of things at home; did know that appellant's place was there, and his presence there much needed; did know appellant had been asked at Jackson to return at once to the shop, and had stated he would do so after a short stay at Chicago for buying a present; and did know that for several days he did not put in appearance at his place of duty. Without any excuse appearing for the absence, such as illness or other

unavoidable cause might afford, the employer was warranted in attributing it to a willful disregard of the master's interests, and to insubordination, which, in our judgment, upon this record justified his dismissal.

The order of the District Court is therefore affirmed.