## MYERS v. AMERICAN WELL WORKS.
### No. 4646.

Circuit Court of Appeals, Fourth Circuit.

Sept. 9, 1940.

W. H. Jordan, of Lynchburg, Va., for appellant.

F. G. Davidson, Jr., and S. V. Kemp, both of Lynchburg, Va. (T. G. Hobbs and Franklin Daniel, both of Lynchburg, Va., on the brief), for appellee.

Before PARKER and DOBIE, Circuit Judges and CHESNUT, District Judge.

## DOBIE, Circuit Judge.

Warren G. Myers (plaintiff-appellant, hereinafter called Myers) brought an action against American Well Works, a corporation (defendant-appellee, hereinafter called American), seeking damages for alleged breach of contract. At the conclusion of Myers' testimony (or, more properly, of all the testimony which he was permitted to introduce) Judge Paul, in the District Court, directed the jury to find a verdict in favor of the defendant, which was accordingly done. Though there are other questions involved in the appeal, we believe we need concern ourselves only with the correctness of the ruling by Judge Paul. Since we think the ruling was entirely proper, we affirm the judgment of the District Court.

Two related contracts are involved in this action. Under the first contract, Myers became the selling agent of American in the territory comprising the States of Virginia, North Carolina and South Carolina. By the second contract, Myers was to procure a selling agent or distributor to cover for American the States of Florida and Georgia. For the Florida and Georgia sales made by his appointee, Myers was to receive an over-ride, or commission, of 5%. Myers alleged a breach of both these contracts by · American and, for such alleged breaches, he sought damages in the not inconsiderable sum of $540,000.

For the purpose of this appeal, we must, of course, consider the evidence at its strongest on behalf of Myers. This we do, in addition to giving him the advantage of every fair and reasonable intendment which the evidence can justify. Even from that vantage ground, so favorable to Myers, the evidence, we think, did not make out a prima facie case for the determination of the jury.

At best, under this first contract, Myers was to act as exclusive selling agent for American in Virginia, North Carolina and South Carolina, was to rebuild its prestige in these States, was to discontinue representing other manufacturers, and was to receive a specified commission on such sales of the products of American as he might be able to make in these three States. Though the contract provided that Myers was to pay his own expenses, American made monthly advances (in varying sums) to Myers for his expenses, with the clear understanding that these advances were to be charged against, and were to be deducted from, his commissions.

As Judge Paul said in his clear but concise opinion in the District Court: "There was no contract ever entered into here which made this man (Myers) a permanent sales representative (of American), irrespective of conditions, and the necessary conditions were that he should produce business to a reasonable extent." In addition, this first contract of employment, we think, is subject to the implied condition that the conduct of the employee towards the employer shall at least be respectful and free from insolence, disrespect and insubordination. See 1 Labatt, Master & Servant, 2d Ed., § 299, p. 930; 2 Williston, Contracts, § 1020; 39 Corpus Juris, note at page 85. See, also, Darst v. [Mathieson] Alkali Works [C.C.], 81 F. 284; Lubriko Co. v. Wyman [3 Cir.], 290 F. 12; Peniston v. [John Y.] Huber Co., 196 Pa. 580, 46 A. 934.

The second contract certainly did not vest a plenary, unconditional and irrevocable power in Myers to appoint (with the consequent advantage to himself) a sales-agent of American for Florida and Georgia. We see in this contract no more than an undertaking that Myers was to receive the over-ride, or commission, of 5%, on sales of American's products made in Florida and Georgia by the appointee of Myers, if, but only if, during Myers' term of employment with American, Myers should by his efforts secure for American a sales-agent, who should prove acceptable to (and must be approved by) American, so that a reasonable contract could be entered into between American and such appointee.

The record discloses that on March 1, 1938 (about eighteen months after Myers had entered the employ of American), Myers had received advancements from the Company of $680 in excess of commissions due him; that on May 16, Myers was in the red to American in excess of $1,000, and on July 20, he was similarly indebted to the Company in the amount of $1,150. On July 20, 1938, American wrote Myers that his account was $1,150 in the red and that it would be necessary for him to finance himself in the future until such time as the commissions earned by him should equal this deficit, at which time the drawing account might be reopened. On July 23, 1938, after receiving this letter, Myers wrote to the Company, arguing his case for a retention and a continuation of the advancements. Four days later, without anything further having occurred and without hearing any more from American, Myers wrote an extremely objectionable letter to American, in which he denied the right of American to terminate either the first contract as to his employment in Virginia, North Carolina and South Carolina or the second contract as to the appointment of a sales agent to cover Georgia and Florida. In this same letter, Myers charged American with using him as a "cat's paw" to re-establish the stability and products of the Company, and accused the Company of making slanderous and false statements to other persons concerning his activities. Upon the receipt of this letter, the General Manager of American on July 29, 1938, wrote to Myers that his services and contracts, written or verbal, with American, would all terminate on August 1, 1938

In a letter dated May 16, 1938, American had called Myers' attention to the fact that he had not turned in to the Company a single order for more than four months. It might be noted that American, some months after its dismissal of Myers, credited him with $550 on its advancements against his commissions, by virtue of the fact that Myers had, prior to his dismissal, rendered some services and conducted some negotiations in connection with an order, obtained after his discharge, from the town of Blackstone, Virginia.

Certain facts stand out clearly in connection with the second contract as to the appointment by Myers of an agent who should cover Florida and Georgia. Though Myers seems to have made vigorous and almost desperate efforts to obtain a sales agent for American in Florida and Georgia, he was never able to secure such an agent who was willing to accept any proposition of Myers in this field. There were considerable negotiations between Myers and a Mr. Taulman, and some negotiations between American and Myers as to Taulman. Myers seemed to think that he had plenary power to appoint a sales agent for Florida and Georgia, while American insisted (we think, quite properly) that any appointment by Myers had to be approved by American before it became effective, and that a suitable contract between such appointee and American had to be made. After negotiations with Taulman bogged down, Myers entered into negotiations with Crawley-Gorbandt but, here again, Myers was unable to secure the assent of Crawley-Gorbandt to a proposition calling for Crawley-Gorbandt to represent American in Florida and Georgia.

It seems clear to us that when Myers had secured not a single order for American in his own territory for more than four months, he was certainly not entitled to have American continue indefinitely its financial advancements to him, which would practically make of Myers (to employ a picturesque phrase used by Judge Paul) "a permanent pensioner of the Company." Also, when the Company wrote Myers that these advances could not be continued, after Myers' account with American was $1,150 in the red, and when Myers sent to American the insulting, discourteous and insubordinate letter referred to above, we think American was amply justified in terminating both of the aforestated con-

tracts. Such action by American involved no breach of any valid contract with, and no violation of any legal rights inherent in, Myers.

The record in this case is intricate, unclear, and confusing. It reveals a horrible example of exactly how commercial contracts should not be entered into. Yet we have tried to search the record with sympathy and patience, as we have endeavored to interpret all the evidence in the record with every fair inference and every reasonable intendment in favor of the appellant, Myers. But we are firmly convinced that Myers had no valid, legal claim against American and that Judge Paul acted with entire propriety in directing the jury to bring in a verdict for American.

The judgment of the District Court is accordingly affirmed.

Affirmed.