**Donald D. FLOWERS, Plaintiff,**

v.

**ABEX CORPORATION, Defendant.**

**No. 83 C 2584.**

United States District Court, N.D. Illinois, E.D.

Feb. 15, 1984.

Francis E. Glowacki, William S. Grotefeld & Associates, P.C., Chicago, Ill., for plaintiff.

Michael D. Freeborn, Freeborn & Peters, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This employment discrimination suit is before the court on defendant's motion for summary judgment. For the reasons stated below, the court grants defendant's motion as to Count I of the Amended Complaint and denies it as to Count II of the Amended Complaint. Defendant also has

filed a motion to strike, which the court denies without prejudice.

Plaintiff Donald Flowers was hired by defendant Abex Corporation in March 1974. (Flowers dep. ex. 2.) He received promotions, and he eventually became a production supervisor (or foreman), apparently by May 1976. (Flowers memo filed 1/17/84, p. 5.) Flowers worked at Abex's Chicago Heights Track Works. (Brenner dep. p. 4.) He was one of the production supervisors in the "frog" department,[1] and he was directly responsible to Charles Lawson Brenner, Plant Supervisor. (Brenner aff. ¶¶ 1, 5.) On or about April 1, 1982 Brenner was directed to eliminate three or four salaried positions. (Brenner aff. ¶ 4.) Brenner selected Flowers, among others, to be laid off. (Brenner aff. ¶¶ 11–17.) Flowers alleges that Brenner's decision was based on Flowers' race, and he sues Abex in a two-count Amended Complaint. Count I alleges a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, and Count II alleges a violation of 42 U.S.C. § 1981.

## COUNT I

██ It is not clear exactly what happened when Flowers was informed of Brenner's decision. Apparently, Flowers was to be placed on permanent lay-off status, but he instead elected to terminate his employment and collect accrued vacation and severance pay. (Abex memo filed 11/23/83, p. 4 n.; Flowers dep. pp. 27–28.) The court need not decide at this point exactly what happened, since Flowers concedes that his employment terminated on April 1, 1982, and that he filed his EEOC charge on December 13, 1982. (Flowers memo filed 1/17/84, p. 1.) Flowers' EEOC charge thus was untimely. 42 U.S.C. § 2000e–5(e). Flowers' only argument for relief from the limitation period is that Abex participated in the EEOC proceedings and thereby submitted to the jurisdiction of the EEOC. Flowers cites no authority for the proposition that participation in EEOC proceedings can waive a defense based on untimeliness, and the court believes that such a rule would be detrimental, discouraging reconciliation any time there may be a timeliness defense. The court notes that Abex raised the issue of untimeliness before the EEOC, contrary to Flowers' assertion. (Abex memo filed 1/31/84, ex. A, p. 2; Flowers memo filed 1/17/84, p. 1.)

## COUNT II

██ Count II is brought under 42 U.S.C. § 1981. To prevail under this section a plaintiff must prove intentional discrimination. *General Building Contractors Association v. Pennsylvania,* 458 U.S. 375, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). Many courts have found it helpful, in § 1981 cases, to use the order of proof prescribed for Title VII disparate treatment cases (which also require proof of intentional discrimination) in *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1983). *E.g., Hudson v. IBM,* 620 F.2d 351, 354 (2d Cir.), *cert. denied,* 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980). Under *McDonnell Douglas* a plaintiff's initial burden is to present a prima facie case, giving rise to an inference of unlawful discrimination. If the plaintiff meets this burden, then the burden of going forward shifts to the defendant, to articulate some legitimate, nondiscriminatory reason why it took the challenged employment action. If the defendant is able to do so, then the plaintiff may introduce evidence to show that the employer's articulated reason in fact was not its reason for taking the challenged action, but instead was merely a pretext for unlawful discrimination. 411 U.S. at 802–05, 93 S.Ct. at 1824–25. While this procedure orders the proof and shifts the burden of going forward, the ultimate burden of persuasion remains with the plaintiff. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The court's ultimate inquiry also remains the same: the court must determine whether the defendant intentionally discriminated against the plaintiff. *United States Postal Ser-*

---

1. A "frog" is a device permitting the flanges of wheels to cross a rail. (Brenner aff. ¶ 3.)

*vice Board of Governors v. Aikens,* —— U.S. ——, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983).

█ Because direct evidence of intentional discrimination rarely is available, *McDonnell Douglas* permits plaintiffs to make out a prima facie case indirectly. The showing necessary to give rise to an inference of unlawful discrimination will depend on the facts of a particular case. 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. The parties in this case have referred to the prima facie showing described in *Flowers v. Crouch-Walker Corporation,* 552 F.2d 1277, 1282 (7th Cir.1977). In that case the Court of Appeals stated that a discharged employee's prima facie case must include, *inter alia,* a showing that the employee was satisfying normal job requirements. *Id.* at 1282–83. Abex argues that Flowers cannot show he was satisfying normal job requirements, but the court believes that Abex's argument is misplaced procedurally. Abex's position is not really that Flowers was not satisfying normal job requirements. Brenner stated, at his deposition, that he did not discharge Flowers because his work was unsatisfactory in an absolute sense. Instead, Brenner discharged Flowers because he was required to eliminate three or four salaried positions; he stated that he selected Flowers because his work was unsatisfactory relative to the work of the other foremen. Brenner stated: "Absolutely not, no, sir. I would say that if it was not for the economy, he would still be working for us." (Brenner dep. p. 22.) *Crouch-Walker* clearly holds that relative inferiority of performance, in connection with a workforce reduction, is a legitimate, nondiscriminatory reason for discharge. *Id.* at 1281. As the court reads *Crouch-Walker,* however, relative inferiority goes only to the defendant's articulation of its reason for discharge; it does not go to the plaintiff's establishment of a prima facie case. Espe-

cially in view of the passage quoted from Brenner's deposition testimony, the court must hold that Flowers at least has raised a genuine issue with respect to satisfactory performance of his duties.[2]

█ Abex's position on this motion is that Brenner selected Flowers to be among those laid off for economic reasons, because of the relative inferiority of his performance. Several particulars are identified. It is said that Flowers' shift was responsible for low frog productivity, and that Flowers failed to make necessary corrections in some frogs. Abex also argues that Flowers often was tardy, and that he spent too much time on the telephone.

Another possible reason for Flowers' discharge appears from the evidence of record. An undated, unsigned memorandum discussing Flowers' performance includes these passages:

> All of the years he worked for us he never hired one white person.
>
> I am told he had at least three fights. All with white people....
>
> \* \* \* \* \* \*
>
> A constant complaint from all non minorities was that Don would never deal with them.

(Brenner dep. ex. 3.) Brenner has acknowledged that he wrote this memorandum, but when asked whether he wrote the memorandum before or after Flowers' discharge, Brenner answered that he did not know. (Brenner dep. p. 26.)

Flowers has taken issue with these statements quoted from the memorandum, but Abex, in reply, says this:

> Much of the plaintiff's response and affidavit are devoted to factual issues *not even raised* by Abex in connection with its motion for summary judgment. For example, Mr. Flowers takes issue with the assertion included in some of the company's files that the plaintiff re-

---

**2.** The court wishes to note that it has disregarded the unsworn "affidavits" of Flowers' co-workers. Merely notarizing the signature does not transform a letter into an affidavit; nor do the letters conform to the requirements of 28 U.S.C.

§ 1746. Also, the court is not in complete agreement with Abex's characterization of several passages of Flowers' deposition testimony, for instance, at Abex's memo filed 11/23/83, pp. 6–8.

fused to deal with non-minorities (Flowers Aff. pp. 2–3, 5; Plaintiff's Response pp. 6–7). But the defendant's motion for summary judgment does not assert this as a basis for Mr. Flowers' termination, since there are numerous other grounds as to which the facts are *undisputed.* (Abex memo filed 1/31/84, p. 9; emphasis in original.) The court cannot accept Abex's reply. Were Flowers suing for breach of employment contract, then Abex probably could pick and choose among different grounds that might justify termination, since Abex's actual motivation would be of little significance. *College Point Boat Corporation v. United States,* 267 U.S. 12, 15–16, 45 S.Ct. 199, 200–01, 69 L.Ed. 490 (1925); *Farmer v. First Trust Co.,* 246 F. 671, 673 (7th Cir.1917). The present suit is not, however, a contract action. Whether there were good reasons to terminate Flowers' employment, though important, is only a subsidiary inquiry; the court's ultimate inquiry is into Brenner's actual motivation. On Abex's motion for summary judgment the court must assume that Brenner's unsigned, undated memorandum may reflect his thinking at the time he selected Flowers for discharge. The court therefore cannot ignore anything set out in the memorandum, even if Abex wishes to rely only on other matters.

Of course, it may have been perfectly appropriate for Brenner to make the criticisms the court has quoted. If Brenner justifiably believed that Flowers was using his position to discriminate against white personnel or applicants, then that belief properly could have entered into Brenner's decision to discharge Flowers. *Cf. Kapustka v. United Airlines,* 25 Fair Empl. Prac.Cas. (BNA) 1283 (N.D.Ill.1981) (Shadur, J., granting summary judgment to defendant in ADEA action, because defendant discharged plaintiff for sexual harassment of other employees). On the other hand, a black employee's poor relations with whites might be viewed in different ways, and the court is obligated to look closely at this aspect of the case. At least some of the underlying facts are in dispute, for instance with respect to Flowers' asserted failure to hire white applicants.

(Flowers aff. p. 3; Brenner dep. pp. 27–28.) Based on all the evidence of record, the court cannot say that Abex has demonstrated the absence of any genuine issue of material fact with respect to Brenner's motivation in selecting Flowers for discharge. The court makes no holding as to the ultimate outcome, but the court does hold that this case requires a trial.

Abex has filed a motion to strike portions of Flowers' affidavit. Two of the challenged passages are relevant to the court's present ruling: the portion on page 2 and the portion at the top of page 3. While these portions are relevant, striking them would not change the court's ruling, since other passages support the court's ruling. The court will not strike the challenged passages, but Abex may renew its objections in the future, should any prejudice arise.

Accordingly, the court grants defendant's motion for summary judgment on Count I of the Amended Complaint, and the court denies defendant's motion for summary judgment on Count II of the Amended Complaint. The court denies without prejudice defendant's motion to strike portions of Flowers' affidavit. Status hearing set for March 2, 1984, at 9:30 a.m., at which time the court will set a short trial date.

It is so ordered.