## H. D. WILLIAMS COOPERAGE CO. v. SCOFIELD et al.

(Circuit Court of Appeals, Eighth Circuit. April 7, 1902.)

### No. 1,610.

**1. SALES—BREACH OF CONTRACT—DEFENSES—KNOWLEDGE.**

Where defendant agreed to supply plaintiffs with their entire requirements of new barrels for a certain year at specified prices, and defendant refused to fill plaintiffs' order for barrels, it was not necessary, in an action by plaintiffs for breach of contract, in order to entitle defendant to urge as a defense that plaintiffs had ordered barrels for use in the succeeding year, that he should have had knowledge of plaintiffs' breach of contract in so ordering barrels at the time of his refusal to deliver.

**2. SAME.**

Where, in an action for breach of a contract to furnish plaintiffs with their entire requirements of barrels for a certain year, there was evidence that plaintiffs had sold barrels to another party, which had been ordered for plaintiffs' use from defendant, such sale was not a defense to the action, if made in good faith, and merely for the purpose of accommodating the person served, and not for speculation.

**3. SAME—CONTRACTS—DEPENDENT COVENANT.**

Where defendant contracted to supply plaintiffs with all new barrels needed during a certain year, at specified prices, such contract contained an implied covenant that the plaintiffs were to order only such barrels as were necessary for their business, which was dependent on defendant's covenant to supply; and the breach of the plaintiffs' covenant, by ordering barrels with a view to stocking up for another year, and for sale to other parties, constituted a breach of their contract, which entitled defendant to refuse further delivery and rescind the contract.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

This is an action for breach of contract. William C. Scofield, Daniel Shurmer, John Teagle, and Charles W. Scofield, the defendants in error, sued the H. D. Williams Cooperage Company, the plaintiff in error, upon a contract whereby the defendant cooperage company had agreed to supply the plaintiffs "your entire requirements for new barrels during 1899 at the following points at the following prices"; also to supply "you with all the new barrels you may need at Kansas City for a period of one year from April first next, at 95c. each." The other places specified for the delivery of barrels were St. Louis, Mo.; Des Moines, Iowa; Detroit, Mich.; Zanesville, Ohio; and some other places not necessary to be mentioned. The prices specified in the contract varied somewhat with the places of delivery, and ranged from 92½ cents per barrel, the price at St. Louis, to $1 per barrel, the price at Clinton, Iowa. The contract consisted of a written proposition in the form of a letter, which was mailed by the defendant company at Poplar Bluff, Mo.,

on December 14, 1898, and was addressed to the plaintiffs at their place of business in Cleveland, Ohio, which proposition appears to have been duly accepted. On October 28, 1898, the defendant refused to furnish any more barrels under the contract; having at that time received numerous orders for barrels, which were unfilled. The refusal to ship further barrels was the breach complained of. The defendant, when sued, justified its refusal on the following ground: That the plaintiffs had given orders for barrels, ostensibly to meet the requirements of their business during the year 1899, but in reality to sell the barrels ordered to others at a profit, and had also given orders for barrels for their use during the year succeeding the contract; that is to say, during the year 1900. There was a trial by jury, and a verdict for the plaintiffs in the sum of $2,647.90. The case was brought to this court by the defendant below on a writ of error.

E. S. Robert (D. W. Robert, on the brief), for plaintiff in error.

Nathan Frank (Richard A. Jones and D. W. Voyles, on the brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

No exceptions were saved to the admission or exclusion of evidence which require notice, but several errors are assigned as respects the instructions which were given and refused by the trial court, and concerning which the opinion of this court is invoked. An inspection of the bill of exceptions shows that, at the conclusion of the trial, counsel for the defendant company stated its objections to the charge in the following manner:

"Your honor, my first exception [to the charge] is as follows: * * * That it practically eliminates from the consideration of the jury the testimony of Mr. Carhart that the Paragon Refining Company purchased three lots of new barrels from the plaintiffs during the year 1899. Your honor's charge practically limits it to the one car load." "Another exception is to that part of the charge which tells the jury that if the plaintiffs did order barrels for the year following the contract period, but ostensibly for use during the contract period, that it will not avail us as a defense, unless we knew it and acted on it in rescinding the contract." "There is another exception that I wish to make, and that is that the court charges the jury that the sale of the car load of our barrels to the Paragon Refining Company was not a breach of the contract which justified us in discontinuing shipments."

No other exceptions than the above appear to have been taken to the instructions of the trial court when they were given.

After a careful perusal of the charge, we do not find that the court eliminated from the consideration of the jury any part of Carhart's testimony concerning the sale of barrels at Des Moines. In one place the court did make an allusion to the transactions at Des Moines, but in no such manner as to preclude the jury from finding, if they were so disposed, that on three occasions new barrels were sold by the plaintiffs' agent during the contract period, instead of one load. The jurors were left at full liberty to find on this question as they thought proper. The first exception to the charge is therefore without merit.

The second exception, while it does not embrace the exact language used by the trial judge, is addressed, as we understand, to that part of the charge in which he instructed the jury, in substance, and with reference to the defense that the plaintiffs had given orders for barrels

which they intended to use during the year 1900, that, in order to sustain that defense, it must appear not only that the plaintiffs wrote to their various agents, "telling them to order all the goods in the fall they could for the next year's business," but that it must be further made to appear "that such orders were made, *and that the defendant rescinded the contract, or refused to execute other orders for plaintiffs by reason thereof*." That part of the instruction which we have placed in italics, and to which the exception appears to have been addressed, is indefensible, in that it clearly implies that acts amounting to a breach of contract by one party do not constitute a breach until they become known to the opposite party. This proposition is untenable. Acts which in law amount to a violation of an express agreement, and are of such a nature as will operate to discharge the opposite party from his liability to further perform, will have that effect, even before they become known to him who has the right to complain; and he may avail himself thereof as a defense whenever he ascertains that such acts have been committed. The legal effect of an act amounting to a breach of contract must be the same whether it is known or unknown to the opposite contracting party. Indeed, when it becomes known to the opposite party, he may in turn do some act that will operate as a waiver of the breach, which he cannot well do until he is aware of the breach. Therefore, if the plaintiffs gave their agents directions to send in orders for more barrels than were needed for use in their business during the year 1899, with a view of stocking up for the succeeding year, and such orders were given, this action on the plaintiffs' part was none the less a defense to their action for a breach of the contract, although the defendant company was not aware that such orders had been given when it declined to furnish further barrels, and although its refusal to furnish barrels was not based on that ground. Even if it be true that the defendant company refused to make and ship any more barrels which were ordered by the plaintiffs because the price of barrels had advanced, yet if, after it was sued, it discovered that the plaintiffs had given orders which amounted to a violation of the contract, and that they had been given before there was any rupture of the agreement on its part, it was entitled to avail itself of that defense. There was some evidence in the case, we think, which tended to show, and from which a jury would be warranted in inferring, that some orders had been given by the plaintiffs ostensibly to meet the requirements of their business for the year 1899, but in reality to obtain a stock of barrels for the succeeding year, owing to an expected further advance in the price of barrels; and, such being the fact, the error in the charge must be regarded as material.

The third and last exception quoted above is based, as we think, upon a misconception of the charge. The trial court did not instruct the jury, unqualifiedly, that the sale of the car load of barrels to the Paragon Refining Company was not such a breach of the contract as justified the defendant company in discontinuing shipments. What it did say on that subject was substantially as follows: That if the plaintiffs "bought some considerable quantity of barrels for the purpose of speculating in them, and * * * that they actually sold them for that purpose," it would be a valid defense to the action. In

the same connection (and it is to this clause that the exception evidently relates) the court did instruct the jury, in effect, that if it appeared that the plaintiffs' agent at Des Moines sold a lot of barrels that had been ordered from the defendant to the Paragon Refining Company, not for the purpose of speculation, but to accommodate a business competitor, and merely as an act of courtesy, such a sale would not operate to discharge the contract, so far as the defendant was concerned. There was some evidence in the case tending to show that the sale complained of had been made under the circumstances supposed by the trial court, and the instruction was evidently intended to enlighten the jury on that phase of the case. We are not prepared to hold that this instruction was materially erroneous. If the plaintiffs gave the defendant company an order for a car load of barrels, doing so in good faith, for the purpose of meeting the supposed requirements of their business at Des Moines during the year 1899, and after the arrival of the barrels sold them to the Paragon Refining Company merely to accommodate that company temporarily, and as an act of courtesy, we do not think that a single sale made under such circumstances would be such a breach of the contract as would absolve the defendant from further obligation to perform. Whether the sale of these barrels was such a breach as operated to discharge the contract depends, in our judgment, upon whether they were originally ordered in good faith by the plaintiffs for their own use, and to meet the supposed requirements of their business during the year 1899, or for such ulterior purpose as was alleged in the defendants' answer. It cannot be, we think, in a case like the one in hand, where by the contract the quantity of goods agreed to be sold and delivered was uncertain, and depended upon the requirements of the plaintiffs' trade, that the plaintiffs could not sell any barrels which they had ordered in good faith for their own use without discharging the opposite party from its agreement. An unexpected decrease in the demand for oil, and other causes, might render it necessary to dispose of a part of a stock of barrels which the plaintiffs had accumulated in good faith with the expectation of using them. It must be presumed that the parties to the contract foresaw that such events might occur, and that it was also understood that the plaintiffs would conduct their business in the usual way, extending such courtesies to rival concerns as were customary in the trade. For these reasons, we think that the court's instruction which is now under consideration embodied the right idea, and was substantially correct, and that the instruction which the defendant requested, which declared, in substance, that this sale of barrels to the Paragon Refining Company in itself operated to discharge the contract, without reference to the motives which inspired it, and without reference to the question whether the barrels so sold were ordered in good faith, was itself erroneous, and was properly refused.

In the brief with which we have been favored by counsel for the defendants in error, the position is taken that, even if the defenses pleaded by the defendant in its answer were true (that is to say, if the plaintiffs did give orders for barrels with a view of stocking up for the year 1900, and also with a view of selling them to others at a

profit), yet that such acts would not operate to discharge the defendant from its obligation to perform, but would merely entitle it to recoup the damages which it has sustained in consequence of such wrongful acts. The learned trial judge took a contrary view, holding that the covenant of the one party to supply barrels to meet the other's requirements, and the implied covenant of the opposite party to order only such barrels as were necessary for that purpose, were dependent, and not independent, covenants, or, in other words, that a breach of the latter covenant by the plaintiffs would discharge the defendant at least from its obligation to make further deliveries. No exception was taken to this ruling, and we refer to it only because the question may arise in the further progress of the case. Moreover, if the contention on the part of the plaintiffs is sound, it might follow that the error above specified was not prejudicial, and would not warrant a reversal. Without going into this question at length, it is sufficient to say that we are entirely satisfied with the conclusion which was reached by the trial court. If the plaintiffs ordered from the defendants barrels which were not needed for use in their business during the year 1899, with intent to stock up for the year 1900, or to sell the barrels so ordered at a profit, they violated a material obligation which was imposed on them by the contract, and did so deliberately. The implied promise to order only such barrels as they needed for the year 1899 was a substantial part of the consideration for the defendant's promise to furnish barrels during that year at the price specified. If the defendant company had been requested to supply barrels to meet the requirements of the plaintiffs' business during a period of two years, or to enable them to sell barrels to third parties at a profit, it might, and very likely would, have charged a higher price for its barrels than the price specified in the contract. The breach of the contract complained of was not one of those unintentional or enforced violations of the provisions of a contract in some minor particular, which will sometimes be excused to the extent that the opposite party will only be allowed to take advantage of the breach by recouping his damages. Vide Ralston, Disch. Cont. pp. 46–48. On the contrary, it was a breach of one of the material provisions of the agreement, which entitled the defendant to say that it would treat the contract as abrogated, so far as future deliveries thereunder were concerned. The plaintiffs, after being guilty of such acts as those charged in the answer, could not insist upon further performance, and compel the defendant company to resort to an action for damages, and to such remedy only. It had the right to say, "As you have already ordered barrels which you impliedly agreed not to order, we will not take the chances of your continuing to do so, but will treat the contract as at an end." The authorities, in our judgment, amply sustain the conclusion which was reached by the trial court,—that the breach complained of, if proven, was one whch operated to discharge the obligation of the defendant to further perform, if it elected to do so. Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366; King Philip Mills v. Slater, 12 R. I. 82, 34 Am. Rep. 603; Rugg v. Moore, 110 Pa. 236, 1 Atl. 320; Mining Co. v. Humble, 153 U. S. 540, 551, 552, 14 Sup. Ct. 876, 38 L. Ed. 814; Smith v. Coal Co.,

36 Mo. App. 567; Murphy v. City of St. Louis, 8 Mo. App. 483; St. Louis Paper Box Co. v. J. C. Hubinger Bros. Co., 40 C. C. A. 577, 580, 100 Fed. 595.

For the error heretofore pointed out, we deem it necessary to reverse the judgment and grant a new trial. It is so ordered.