## TRINIDAD ASPHALT MFG. CO. v. TRINIDAD ASPHALT REFINING CO.

(Circuit Court of Appeals, Eighth Circuit. November 26, 1902.)

### No. 1,714.

1. SALES—REFUSAL TO FILL ORDERS—ACTION FOR DAMAGES—EVIDENCE—ADMISSIBILITY.

 A contract for the sale of asphalt and cement contained stipulations binding the buyer to use the goods exclusively in its own trade and for roofs and sidewalks, and authorized the seller to cancel it in case the buyer should sell or use the same other than as so provided. The buyer claimed damages arising from the seller's cancellation of the contract and refusal to fill orders. *Held*, that testimony as to whether the seller knew that the buyer was handling other asphalts was irrelevant.

2. SAME.

 Since the contract merely required the seller to furnish to the buyer the materials designated for the latter's exclusive use in its own trade, and did not permit the buyer to make contracts with third parties, and require the seller to fill them, the court properly allowed a witness for the buyer to be asked on cross-examination if he did not know, when he made a contract with a third party, that the buyer's contract with the seller had about expired, as the answer might have a bearing on the orders for materials for the nondelivery of which the buyer claimed damages.

**3. SAME—BREACH OF STIPULATION—DEFENSE.**

The fact that a seller was anxious to be relieved from a contract requiring it to sell materials did not furnish the buyer an excuse for committing a breach of the stipulation binding it to use the materials so purchased exclusively in its own trade.

**4. SAME—EVIDENCE—ADMISSIBILITY.**

Since it was competent for the seller to show that materials ordered by the buyer, for the nondelivery of which the buyer claimed damages, were not ordered in good faith for the buyer's exclusive use, as required by its contract, but to fill contracts made with third parties, the admission in evidence of a contract between the buyer and a third party, whereby the former agreed to furnish materials to the latter, was proper.

**5. SAME—DAMAGES FOR NONDELIVERY.**

Where a buyer was bound by the contract to use the materials purchased exclusively in its own trade, it could not recover damages for the seller's failure to fill orders for materials intended in whole or in part for delivery to third parties pursuant to contracts made with them, whether the seller knew or did not know of such contracts.

**6. SAME—EVIDENCE—SUFFICIENCY.**

Evidence in an action on a written contract for the price of materials sold under it *held* sufficient to warrant the jury in finding that a part of the materials ordered, and for the nondelivery of which the buyer claimed damages by way of a counterclaim, were, when so ordered, intended for delivery to a third party, pursuant to a contract previously entered into between the buyer and the third party.

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

The defendant in error, a New Jersey corporation, brought this action against the plaintiff in error, a corporation of the state of Missouri, to recover the contract price for specified quantities of different preparations or products of Trinidad asphalt, alleged to have been consigned and delivered by the plaintiff to the defendant on defendant's orders and under a contract in writing between the parties entered into April 8, 1899, which is set forth in full in the petition. By the terms of said contract, which was to continue for three years, the plaintiff agreed to sell and deliver to defendant, free on board cars or boat at Jones Point, N. Y., on terms and conditions stated, all refined Trinidad asphalt, Trinidad asphalt roofing cement, Trinidad asphalt paving cement, and still cleanings which the defendant company might require during the existence of the contract, except that plaintiff should not be obliged to sell more still cleanings than was produced in the regular course of its business. A more particular description of the commodities, and the prices for each, and the times and manner of payments, and provisions for interest in certain cases, and for discount in a specified case were stated. By the fifth subdivision of the contract the defendant agreed to use the Trinidad asphalt and Trinidad cement purchased under the contract exclusively in its own trade, and for the purpose of manufacturing and repairing roofs and laying and repairing sidewalks, and agreed "not to dispose of the same or use, or, to its knowledge, permit it to be used or disposed of, for any other object or purpose whatsoever." By the sixth subdivision of the contract it was provided that, in case the defendant should sell or use or dispose of Trinidad asphalt or Trinidad cement other than as provided in the contract, or otherwise neglect or refuse to comply with its terms and conditions, the plaintiff should have the right to cancel the contract upon 10 days' written notice delivered or mailed to defendant at its usual place of business at St. Louis, and that on the expiration of such notice the contract should absolutely cease and be determined, saving causes of action which either party might claim against the other. Plaintiff claimed to recover the sum of $2,687.65, with specified interest on smaller sums making up that amount from different dates when such smaller sums became payable. Defendant's answer admitted the incorporation of each of the parties, and the making of the written contract set forth in the petition, and controverted the other

allegations of fact in the petition by a general denial. It also, by way of counterclaim, alleged that on or about April 18, 1900, plaintiff notified de-fendant that it would deliver no more merchandise under said contract; that defendant has duly performed all the conditions of said contract on its part, but that plaintiff has failed to perform its part of said contract, and on and after said last-named date refused and refuses to deliver to defendant any of the material provided for in said contract and required by defendant, in-cluding 5,500 tons of refined Trinidad asphalt and 500 tons of Trinidad asphalt roofing cement, although plaintiff had duly accepted defendant's orders for 1,000 tons of said refined Trinidad asphalt; and that defendant was ready to receive and pay for all the goods so ordered, and has been damaged by plaintiff's refusal to deliver the same in the sum of $30,000; for which judg-ment is prayed, with interest and costs. Plaintiff replied to this counterclaim —First. By a general denial of each and every allegation therein contained. Second. By averments that defendant from time to time under said contract purchased Trinidad asphalt and Trinidad cement, but did not use the same exclusively in its own trade and for the purpose of manufacturing and re-pairing roofs and laying and repairing sidewalks, but used such material and disposed of the same for paving purposes to the authorities of Chicago, Kansas City, Cincinnati, and Cleveland, and to other corporations, business and municipal, knowing that the material so sold and disposed of would be used for paving purposes; that this was done secretly, without plaintiff's consent or knowledge; and plaintiff, on discovering the same, exercised its right and election to cancel the contract, and gave 10 days' written notice thereof to defendant by mail, prepaid, addressed to defendant's usual place of business in St. Louis; and that on the expiration of such 10 days the contract ceased; that all orders mentioned in said counterclaim were placed with plaintiff after plaintiff had discovered such violation of the contract by defendant, and when defendant had no right to place such orders. It denied all damage to defendant. At the commencement of the trial it was conceded that plaintiff was entitled to recover or be allowed the amount claimed by it in its petition, and that the only issue to be tried was that involving de-fendant's counterclaim. At the close of the trial the jury returned the follow-ing verdict: "We, the jury, find the issues for plaintiff, and assess its dam-ages at the sum of $2,839.74,"—signed by the foreman; and for this amount, with costs, judgment was duly entered in favor of the plaintiff.

W. B. Homer, for plaintiff in error.

Adiel Sherwood, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and LOCH-REN, District Judge.

LOCHREN, District Judge, after stating the case as above, deliv-ered the opinion of the court.

The issues in this case were of fact only, and are settled by the verdict of the jury. The assignments of error present for our con-sideration only certain exceptions taken to rulings of the court in respect to the admission of testimony, and to portions of the charge as given to the jury, and to one refusal to charge as requested.

1. The court correctly ruled that the question to defendant's wit-ness Terpening whether, to his knowledge, the officers of plaintiff company knew that defendant company was handling other asphalts, called for irrelevant testimony. The defendant's right to handle other asphalts was unquestioned, and whether or not plaintiff's officers knew it did so was immaterial.

2. There was no error in allowing the same witness to be asked, on cross-examination, if he did not know, when he made the contract with the Ayreult firm at Tonawanda, that their contract with plain-

tiff company had about expired. The court correctly held that, while the contract required plaintiff to sell and deliver to defendant material of the kinds designated to be used exclusively in its own trade and for the purposes stated, it did not permit defendant, by making contracts with other like companies throughout the country, to require the plaintiff to supply all such companies under its contract with defendant. The question called for an answer which might have a bearing on the propriety of some of the orders for material sent to plaintiff, in respect to which defendant claimed damages.

3. The question asked the same witness on cross-examination respecting the mixture which defendant, after cancellation of the contract, had been selling the city for paving purposes, was within the fair limits of cross-examination of this interested witness. It might lead to a comparison of that material with what had been previously sold to the city. It did not call forth any answer to defendant's prejudice.

4. The questions asked of the witness Reid were properly excluded. It was no excuse for defendant's breach of the contract that plaintiff was anxious to be relieved from it.

5. In view of the testimony of the witness Reddick in respect to the furnishing by defendant of Trinidad cement to the city for paving, it was not improper to show that his own like act was with permission of plaintiff, with whom he had a like contract.

6. The questions and answers covered by the sixth assignment of error occurred in an unobjectionable attempt to explain the differential characteristics of two kinds of asphalt commodities. There was little success in the attempt, and no harm to either party.

7. That part of the deposition of the witness Liesak ruled out was irrelevant. There was no attempt to show that the cement which defendant was charged with having sold to the city was what was described in the contract or by any one as "paving cement."

8. That part of the deposition of the witness Boorm stating the prices at which he was directed by the president of the Alcatraz Paving Company to sell material was plainly incompetent, and properly excluded.

9. The agreement of December 30, 1899, between the defendant and the National Roofing Company, of Tonawanda, was properly admitted in evidence. The contract made by the parties to this action is admitted by the pleadings. The fifth subdivision limits the plaintiff's agreement to sell to material to be used exclusively in the defendant's own trade and for roofs and sidewalks. Defendant, by its counterclaim, avers failure by plaintiff to fill its large orders for material, which it claims plaintiff was bound by the contract to sell and deliver. It was open to plaintiff, under the separate general denial contained in its reply to the counterclaim, to contend, and establish by proof, if it was able to do so, that any part of the materials so ordered was not sought or intended by defendant to be used exclusively in its own trade, and for purposes of roofs and sidewalks, but for other purposes for which plaintiff was not bound to sell or deliver any materials. It is needless, in this connection, to consider the various meanings which may be ascribed to the word "trade." The

correct meaning in any particular case is arrived at by considering the word in the light of the subject-matter, and of all the provisions and the other language of the instrument in which it is found. In this contract the word is qualified and limited by other words in the same clause. The plaintiff only agreed to furnish the materials for use in the exclusive trade of the defendant, and it was also limited to be used only for roofing and sidewalks. It is safe to say that, as used by the parties in that instrument, it was not intended to grant to the defendant the right to go to all like corporations over the country, and by subcontracts for supplying each of them with materials bind the plaintiff to supply them all, through defendant, under this contract. It was competent, therefore, for the plaintiff to show, if it could, that materials ordered by the defendant, which were not shipped, and in respect of which the defendant claimed damages, were not ordered in good faith for defendant's exclusive use, but to fill the defendant's contracts to supply other corporations with large quantities of the same materials. Defendant's contract with the National Roofing Company had a tendency to support such contention, and was competent. If defendant, when it sent its large order of January 10, 1900, intended that the material so ordered, or any considerable part of it, should be applied, not to the exclusive use of defendant in its trade, but to fill the contract it had but a few days previously made with the National Roofing Company, or to fill any similar contract, such order was wrongful, and a fraud on plaintiff. And defendant could be entitled to no damages for the failure to deliver such material, whether the plaintiff then knew or did not know of the fraud intended. Cooperage Co. v. Scofield (C. C. A.) 115 Fed. 119, 121.

It cannot be said that there was no evidence to submit to the jury on which they might find that part of the refined Trinidad asphalt ordered by defendant of plaintiff, and for the nondelivery of which defendant claimed damages, was, when so ordered, intended for the National Roofing Company. Defendant's contract with that company was made December 30, 1899. By it the defendant agreed to sell and deliver to the National Roofing Company 500 tons of refined Trinidad asphalt yearly, shipments to be made from time to time in car-load or boat-load lots, as the roofing company might desire, at $23.30 per ton, free on board cars or boat at Jones Point, N. Y. This was at plaintiff's plant, and the manner of delivery the same as plaintiff had agreed in respect to deliveries to defendant. Eleven days later defendant placed its order with plaintiff for 1,000 tons of refined Trinidad asphalt, to be sent on later shipping directions. Defendant's testimony shows that it always claimed that plaintiff should consign material it should order to whatever place it might direct. But little remained to render the circumstantial evidence very strong—almost conclusive—that this order was in part to supply the National Roofing Company, and that little was amply furnished by the defendant's evidence that at once, on plaintiff's refusal to further deliver to it refined Trinidad asphalt, and thereafter, it was unable to procure any of that material. Where, then, did the defendant purpose to procure the refined Trinidad asphalt which it had just con-

tracted to deliver to the National Roofing Company, as it might order it, in car-load or boat-load lots, shipped at Jones Point, N. Y.? What has just been stated applies to some of the exceptions taken to the charge of the court. We have examined all those exceptions with care, and find no error in the charge, which is a very full and fair presentation of the case, and covered the request which was refused so far as that was proper.

The verdict was in proper form, and disposed of all the issues, and the judgment is affirmed.