# COLLEGE POINT BOAT CORPORATION *v.* UNITED STATES.

## APPEAL FROM THE COURT OF CLAIMS.

No. 121. Argued November 17, 1924.—Decided January 19, 1925.

1. Claimant's preparations to perform its contract for furnishing supplies to the Navy were stopped as the result of steps taken by the Navy Department, for the purpose of avoiding useless production, without manifested intention to cancel the contract and without giving the notice requisite to the exercise of the unconditional right of cancellation existing under the Act of June 15, 1917, (*Russell Motor Car Co.* v. *United States,* 261 U. S. 514,) pursuant to which the contract was made. *Held,* that there was no cancellation as a matter of law, and that the stoppage of performance was an anticipatory breach. P. 15.

2. The Government's right of cancellation, under the above statute, is continuing and not lost by delay in exercising it. P. 16.

3. This continuing right of cancellation, limiting the value of the other party's right to require performance, curtails his damages for an anticipatory breach by the Government, so that prospective profits are not recoverable. *Id.*

4. There is no general rule that a party can not exercise a right to cancel a contract when himself in default. *Id.*

5. *Held,* that a default on the part of the Government was insubstantial and did not render inequitable delayed exercise of its right to cancel the contract. *Id.*

6. The right to cancel conferred by the Act of June 15, 1917, is not made dependent on a tender of 75% of the amount offered by the Government in settlement. P. 17.

58 Ct. Clms. 380, affirmed.

APPEAL from a judgment of the Court of Claims rejecting a claim for loss of profits anticipated under a contract with the United States, performance of which was stopped by the Government.

*Mr. Julian C. Hammack* and *Mr. Bynum E. Hinton,* for appellant.

The mere presence in a contract of a right of cancellation by one party, does not relieve that party from lia-

bility for breach of the contract. *Kenney* v. *Knight*, 119 Fed. 475.

Also the mere presence in a contract of the right of cancellation, if not exercised in accordance with that right, does not affect the measure of damages for breach. The injured party in such a case is entitled to recover his proven prospective profits. *Philadelphia etc. R. R. Co.* v. *Howard*, 13 How. 307.

The law is generally well settled that a party who is himself in default of performance cannot rescind. 13 Corpus Juris 614, § 662. It is also well established that a party cannot cancel a contract, even though a right to do so is expressly written in the contract, after a liability has occurred. This is so even where the extent of the liability is not then determinable. Black on Rescission and Cancellation, § 480.

As the contract has not been cancelled, no question of the application of the Act of June 15, 1917, is involved. Therefore *Russell Motor Car Co. Case*, 261 U. S. 514, is not decisive of the case at bar. That case, moreover, is otherwise clearly distinguishable on the facts.

There was no taking of this contract by the government. The stoppage of the physical work had to do with the subject-matter and could not constitute a cancellation or a taking of the contract. *Omnia Commercial Co.* v. *United States*, 261 U. S. 502.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for appellee.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

On October 25, 1918, the College Point Boat Corporation agreed to manufacture for the Navy Department 2,000 collision mats. The United States agreed to pay therefor $641,200, and to supply the required canvas. On

November 11, 1918, the Armistice was signed. Soon
after, the Navy Department informed the Corporation
that the mats would probably not be needed, suggested
that it stop operations, and asked it to submit a propo-
sition for cancellation of the contract. This notification
and request were received before the process of manufac-
ture had been begun; but the Corporation had expended
large sums in necessary preparations. Negotiations for
settlement followed. They extended over nearly eight
months and proved inconclusive. Without prejudice to
the rights of either party, the United States made a par-
tial settlement by taking over at cost raw materials which
the Corporation had purchased or contracted for.

    In November, 1919, this suit was brought in the Court
of Claims to recover the further amounts claimed. The
court found that, in addition to the amounts covered by
the partial settlement, expenditures had been made, serv-
ices rendered and charges incurred aggregating $5,112.42
in cost or value. For that amount it entered judgment.
The claimant contended that the United States was under
the ordinary liability of one who, having contracted for
goods to be manufactured, without cause gives notice that
he will not accept delivery; and that it was liable, also,
for the prospective profits. *United States* v. *Speed,* 8
Wall. 77; *United States* v. *Purcell Envelope Co.,* 249
U. S. 313, 320. The court found that the Corporation
was ready, willing and able to perform the contract; and
that if it " be entitled to prospective profits on the con-
tract work, the amount of such profits it would be en-
titled to recover, after allowing for its release from the
care and responsibility which would have attended full
performance of the contract, would be $123,980." As a
conclusion of law, the court ruled that no part of these
prospective profits was recoverable, because the United
States had cancelled the contract. 58 Ct. Clms. 380.
The case is here on appeal under § 242 of the Judicial
Code.

There is no finding of fact that the contract was cancelled. Nor do the facts found warrant the conclusion that there was in law a cancellation before the suit was begun. The contract did not contain any clause authorizing cancellation other than for default by the plaintiff. There was no such default. The United States actually did have an unconditional right of cancellation. For the contract was made pursuant to the Act of June 15, 1917, c. 29, 40 Stat. 182. By virtue of the statutory provision, as was later held in *Russell Motor Car Co.* v. *United States,* 261 U. S. 514, the right to cancel became, by implication, one of the terms of the contract. But, so far as appears, neither party knew that the United States had such a right. The Navy Department failed to give the notice requisite to terminate the contract. Its sole objective in suggesting that preparations for the performance of the contract be stopped was to avoid useless production. The Corporation necessarily acquiesced. The parties negotiated, seeking to find a basis on which they could agree to cancel and liquidate the obligation of the Government. In the negotiations, and in the agreements which embodied the partial settlement, the Navy used language inconsistent with an intention to exercise a right of cancellation. As its efforts to procure consent to cancel proved futile, stopping the work was an anticipatory breach.

The question remains whether the measure of damages recoverable for this breach is the same as it would have been if the Government had not possessed the right of cancellation. A party to a contract who is sued for its breach may ordinarily defend on the ground that there existed, at the time, a legal excuse for nonperformance by him, although he was then ignorant of the fact.[1] He

---

[1] H. D. Williams Cooperage Co. *v.* Schofield, 115 Fed. 119, 121; Trinidad Asphalt Mfg. Co. *v.* Trinidad Asphalt Refining Co., 119 Fed. 134, 138.

may, likewise, justify an asserted termination, rescission, or repudiation, of a contract by proving that there was, at the time, an adequate cause, although it did not become known to him until later.[2] An unconditional right to cancel can be availed of for the purpose of terminating a contract, even after suit brought, unless some intervening change in the position of the other party renders that course inequitable. Compare *Clough* v. *London & Northwestern Ry. Co.*, L. R. 7 Exch. 26, 33 *et seq.* Ignorance of its right doubtless prevented the Navy Department from taking, shortly after the Armistice, the course which would have resulted legally in cancelling the contract at that time. But the right to cancel was not lost by mere delay in exercising it; among other reasons, because the statute conferred upon the Government also the power to suspend the contract. The right remained effective as a limitation upon the Corporation's right to have the Government accept and pay for the mats. This continuing right of cancellation, which was asserted later, in court, operated to curtail the damages recoverable. It limited the value of the plaintiff's right to require performance, and hence the amount and character of the loss for which compensation must be made. Prospective profits were not recoverable.

The Corporation contends that the United States had broken its agreement even prior to its notification to stop preparations for the performance of the contract; and that a party in default cannot exercise a right to cancel. There is no such rule of general application. The default referred to was not substantial. By the terms of the

---

[2] Carpenter Steel Co. *v.* Norcross, 204 Fed. 537, 539–540; Farmer *v.* First Trust Co., 246 Fed. 671, 673; E. H. Taylor, Jr., & Sons *v.* Julius Levin Co., 274 Fed. 275, 282; Lubriko Co. *v.* Wyman, 290 Fed. 12, 15; Boston Deep Sea Fishing & Ice Co. *v.* Ansell, L. R. 39 Ch. Div. 339, 352; In re London & Mediterranean Bank, Wright's Case, L. R. 7 Ch. App. 55; Baillie *v.* Kell, 4 Bing. N. C. 638, 650.

contract the United States was to furnish the canvas within thirty days, that is, on November 25. It did not do so. Two weeks before that date the Armistice had been signed. On December 3, the Corporation requested that the canvas be supplied. On December 6 it received from the Navy notice that the mats would probably not be needed. Neither these facts, nor any other found, render inequitable a delayed exercise of the right to cancel.

It is also urged that the Navy did not tender to the Corporation 75 per cent. of the amount which it offered in settlement. The right to cancel conferred by the Act of June 15, 1917, is not made dependent upon such tender. The Corporation made no demand for that amount. Moreover, for aught that appears, it has actually received a larger percentage. With the amount awarded by the lower court, it will receive full compensation.

*Affirmed.*