United States Court of Appeals,

Fifth Circuit.

No. 92-4627.

LA-NEVADA TRANSIT COMPANY, Plaintiff-Appellant,

v.

MARATHON OIL COMPANY, Defendant-Appellee.

March 11, 1993.

Appeal from the United States District Court for the Western District of Louisiana.

Before JOHNSON, GARWOOD, and JONES, Circuit Judges.

JOHNSON, Circuit Judge:

Louisiana-Nevada Transit Company (LNT) brought suit against Marathon Oil Company (Marathon) seeking an injunction to prevent Marathon from ceasing sales under a natural gas purchase contract. Marathon counterclaimed for damages and a declaratory judgment that the contract had been terminated. The district court granted summary judgment in favor of Marathon, and LNT now appeals. We hold that Marathon made a timely exercise of its option to terminate the purchase contract. Accordingly, the order of the district court granting summary judgment in favor of Marathon is affirmed.

I. FACTS AND PROCEDURAL HISTORY

The centerpiece of this dispute is a 50-year old natural gas purchase agreement between LNT and Marathon.[1] The contract provided that LNT would purchase from Marathon the "first ten million cubic feet of [natural] gas per calendar month for its gas requirements for so long a period as [LNT] shall have a market for such amount." Otherwise, LNT had no obligations to purchase natural gas under the contract. Marathon, on the other hand, was obligated to provide LNT with up to 10 million cubic feet (10 MMcf) of gas per day—if LNT wished to purchase it. The agreement also contained

---

[1]The original agreement—signed on July 1, 1940—was between LNT and an organization of oil and gas producers called the Cotton Valley Operators Committee (CVOC). In 1976, CVOC signed an operating contract with Marathon designating Marathon as unit operator of the CVOC properties and giving Marathon the right to act as agent for the lease owners.

a provision allowing Marathon to terminate the contract if LNT failed "to take and pay for, or pay for if not taken," at least 30 MMcf of gas from Marathon during any consecutive 90-day period.[2]

By its express terms, the contract provided that LNT was obligated to pay "on or before the twentieth day of each calendar month" for all gas delivered during the preceding month. However, the parties concede that the billing and payment terms of the contract had been modified by their course of dealing. It was the practice of the parties for LNT to send Marathon a monthly statement indicating the volume of gas taken by LNT during the preceding month. Marathon would then send LNT a bill which was due a month later. For example, under this practice payment for the gas delivered to LNT during September was not actually due until mid-November. But while the contract contained an express provision governing payment for gas delivered, the contract failed to specify when LNT was required to pay for any deficiency volume.[3]

From March through September of 1989, there were twenty-two 90 day periods—ending June 5 through 17 (the June periods) and September 14 through 22 (the September periods)—during which LNT failed to take or pay for at least 30 MMcf of natural gas from Marathon.[4] By a letter dated November 3, 1989, Marathon informed LNT that it was exercising its option to terminate the

---

[2]The pertinent provisions of Article I of the agreement are as follows:

> Buyer [LNT] agrees to buy from Seller [Marathon], the first ten million cubic feet of gas per calendar month for its gas requirements for so long a period as Buyer shall have a market for such amount. This provision shall not, however[,] be construed as a minimum take provision, that is to say, the Buyer shall be obligated to pay for only such as it actually receives, subject, however, to the provisions of the paragraph immediately following.

> Should Buyer fail, neglect or refuse to take and pay for, or pay for if not taken, at least thirty million cubic feet of gas from Seller during any consecutive ninety day period during the life of this contract, then the Seller may at its option elect to terminate this contract by giving to Buyer 60 days' notice in writing of its intention so to do.

[3]The contract imposed no obligation on LNT to purchase a minimum amount of natural gas from Marathon. Instead, the contract simply provided that if LNT purchased less than 30 MMcf of gas in any 90-day period Marathon could terminate the contract.

[4]A different 90-day period ended every day—a period made up of that day and the 89 days before it.

contract.[5] On November 14, LNT attempted to pay for the deficiency in gas volume during the June and September periods, but Marathon refunded LNT's payment.

On December 8, LNT commenced an action seeking a permanent injunction to prevent Marathon from terminating the contract. The district court issued a temporary restraining order to that effect. Along with its answer to LNT's complaint, Marathon filed a counter-claim seeking a declaratory judgment that the contract had already been terminated. Marathon also sought damages for the wrongful issuance of the injunction order.

Both parties moved for summary judgment. On July 17, 1991, the district court issued a memorandum ruling denying LNT's motion for a permanent injunction and granting Marathon's motion for a declaratory judgment. The district court ruled that Marathon had terminated the contract effective January 4, 1990. In its final judgment, the court also awarded Marathon costs and damages in the amount of $16,000. LNT now appeals the order of the district court granting Marathon's motion for summary judgment. First, LNT argues that an option to terminate never became effective for the September periods because LNT made a timely payment for the deficiency volume. Second, LNT argues that Marathon never sent an effective notice of termination for the deficiencies during the June periods. Also, even if Marathon's notice was effective for the June deficiencies, LNT argues that it was not timely.

## II. DISCUSSION

This is a diversity case controlled by Louisiana law. Since this Court is asked to review a summary judgment, the standard of review is *de novo. Johnson v. Odom,* 910 F.2d 1273, 1277 (5th Cir.1990).

A. *The September Periods*

Under the terms of the contract, Marathon's option to terminate became effective only if LNT (1) failed to take and pay for at least 30 MMcf of gas during a 90-day period; *and* (2) failed to pay for the difference between the gas purchased and the minimum contract amount. The district court

---

[5]The contract required Marathon to give LNT 60-days notice. Therefore Marathon's notice of termination stated that the contract would be terminated effective January 4, 1990.

examined the contract and concluded that, in order to prevent Marathon's termination option from arising, LNT had to pay for the difference *during* the 90-day period. In other words, if LNT failed to purchase the minimum gas during any 90-day period, Marathon's right to terminate arose immediately upon the end of the time period. The district court noted that the express billing provision in the contract only applied to gas *delivered.* Instead, the district court held that payment for any gas deficiency was controlled by Article I of the contract, which required LNT "to take and pay for, or pay for if not taken," at least 30 MMcf of gas *during* every consecutive 90-day period. Under the interpretation used by the district court, Marathon's option to terminate the contract for deficiencies during the September periods became effective immediately after those periods ended—well before Marathon sent the notice of termination on November 3.

LNT argues that the district court erred in accepting this interpretation of the contract. According to LNT, under the only reasonable interpretation of the contract, payment for gas deficiencies should have been due at the same time LNT paid for the gas actually delivered. Under the terms of the contract, as modified by the practice of the parties, payment for the gas delivered to LNT during September was not due until mid-November. LNT argues that payment for any gas deficiency was due at the same time. Since LNT tendered payment on November 14 for the gas deficiencies during the September periods, LNT contends that Marathon's option to terminate never arose for the September periods.

We must agree with LNT on this point. The common intent of the parties controls our interpretation of any Louisiana contract. LA.CIV.CODE art. 2045. The only reasonable interpretation of this contract is that the parties intended for LNT to pay for the gas deficiencies during the September periods at the same time it paid for the gas actually delivered. As LNT points out, the interpretation used by the district court would have required LNT to have a paymaster at the natural gas plant every day to immediately pay for any deficiency in the gas taken during the preceding 90-day period. It is difficult to believe that the parties could have intended such a bizarre arrangement.

LNT is also correct in pointing out that, while the language of the contract's billing and

payment provision is limited to gas delivered, the pricing provision is also limited to gas delivered.[6] Under Louisiana law, "[e]ach provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LA.CIV.CODE art. 2050. Yet, the district court held that the pricing provision applied to any gas deficiency, even though the billing and payment provision did not. Such an interpretation flies in the face of established Louisiana law.

We therefore reject the interpretation of the contract adopted by the district court. LNT was not obligated to pay for any gas deficiencies during the September periods until mid-November, when it paid for the gas actually delivered. Since LNT tendered a timely payment for those gas deficiencies, Marathon did not have the right to terminate the contract based upon deficiencies during the September periods.

*B. The June Periods*

In addition to its holding regarding the September periods, the district court went on to hold that Marathon timely exercised its option to terminate the contract due to deficiencies during the June periods. It is undisputed that LNT failed to pay for the minimum amount of gas during several consecutive 90-day periods that ended in June of 1989. It is also undisputed that LNT did not pay for the gas deficiencies when it paid for the gas actually delivered during these periods. However, evidence was presented that at the time Marathon sent its notice of termination Marathon was unaware that LNT had purchased less than the minimum amount of gas during the June periods. LNT argues that, as a result, Marathon's notice of termination could not have been effective for the June periods because Marathon could not have exercised an option that Marathon did not know existed. We reject this argument.

In determining whether a notice of termination is effective, the proper focus is on whether the notice is sufficiently clear to apprise the other party of the action being taken. *Atlantic Banana Co. v. Standard Fruit & Steamship Co.,* 493 F.2d 555, 560 (5th Cir.1974). In this case LNT

---

[6]Article VI of the contract provides "The price to be paid Seller by Buyer *for gas delivered* hereunder shall be as follows...." (emphasis added).

obviously understood the notice to apply to the June periods because it included payments for the June deficiencies along with its September payments. As long as a valid ground existed to justify termination of the contract, it simply does not matter whether Marathon knew of it or not at the time it sent the notice. *See College Point Boat Corp. v. United States,* 267 U.S. 12, 15, 45 S.Ct. 199, 200, 69 L.Ed. 490 (1925) (holding that party sued for breach of contract may justify termination of contract by proving adequate cause, even though cause was not known until after breach); *First Commodity Traders, Inc. v. Heinold Commodities, Inc.,* 766 F.2d 1007, 1013 (7th Cir.1985) ("If the legal excuse for nonperformance exits at the time of termination, the terminating party may rely on the excuse in a breach of contract action even though he was unaware that the excuse existed at the time he terminated."). Marathon's notice of termination was sufficient to apprise LNT of the action being taken. We therefore hold that the notice of termination was effective for the June periods.

Finally, LNT argues that, even if Marathon gave a proper notice of termination for deficiencies during the June periods, Marathon failed to exercise this option in a timely fashion. Because the contract does not state a time limit, both parties agree that the option must be exercised in a reasonable time. LNT argues that a reasonable period would be no longer than sixty days and that by waiting until November Marathon waived the right to exercise the termination option for the June periods.

We find LNT's argument very difficult to accept. Under the contract interpretation urged by LNT, and adopted by this Court, LNT had until mid-August to pay for any gas deficiencies during the June periods. That means that only two and a half months passed before LNT received Marathon's notice of termination. Under the facts of this case, it cannot be said that a delay of only two and a half months was commercially unreasonable. Therefore we hold that Marathon's November 3 notice of termination was timely for deficiencies during the June periods.

### III. CONCLUSION

For the reasons stated, we hold that the district court erred in interpreting the contract to require LNT to pay for gas deficiencies during the 90-day period in which they occurred. Under the most logical and reasonable interpretation of this contract, LNT was not required to pay for gas

deficiencies during the September periods until mid-November. Marathon therefore did not have an option to terminate the contract arising from LNT's failure to pay for the minimum amount of gas during the September periods. However, LNT did not make a timely payment for the deficiencies in purchases during the June periods. The district court did not err in concluding that Marathon gave a valid and timely notice of termination based on deficiencies in gas volume during the June periods. The contract in question therefore terminated on January 4, 1990. Accordingly, the judgment of the district court is affirmed.