Booth, Judge
delivered the opinion of the court.
This case has been before the court heretofore. On December 4, 1921, a judgment for $20,112.42 was awarded the plaintiff in an opinion on that date announced. On December 16, 1921, the court, of its own motion, set aside an order overuling a motion for a new trial. On January 16, 1922, the court filed an order allowing new trial, vacating and setting aside its former judgment, withdrawing the findings, and remanding the case to the calendar for further proceedings. The case is now here in pursuance of the last-mentioned order.
The plaintiff on October 25, 1918, entered into a written contract with the Navy Department to manufacture and deliver 2,000 collision mats. The defendant was to furnish all the canvas for their"manufacture and to pay for the total quantity when delivered the sum of $641,200. The plaintiff prepared for the execution of the contract, purchased and committed itself by contract to purchase the necessary materials, enlarged its plant, and did all it could be reasonably *390 expected to do to proceed immediately to perform its agreement. It never did, however, make or deliver a single mat. On December 3, 1918, it requested the defendant to furnish the necessary quantity of canvas, as it had agreed to do, and the defendant did promise, to do so. Instead of furnishing the canvas, however, the defendant requested a conference with the plaintiff looking toward an amicable agreement for a cancellation of the contract, the armistice having intervened and the defendant not wanting the mats. The defendant at this time asked the plaintiff to cease operations under the contract, and the plaintiff acceded thereto. On December 6, 1918, the plaintiff submitted in writing its proposal of terms o f compromise. It is set forth in Finding Y.
On February 10, 1919, the parties to the original contract agreed upon a supplementary contract, by the terms of which the defendant took over and paid -for all materials which plaintiff had committed itself by subcontracts to purchase in order to perform the original contract and which the plaintiff had not been able to cancel. This was a mutual arrangement between the parties, and can have no other significance than a voluntary assent to the cancellation of the original contract. The plaintiff by this agreement put it beyond its power to comply with the original contract, disposed of all materials not on hand, and allowed the defendant to acquire in its stead and assume for it full responsibility for all outstanding obligations which it had been unable to escape by reason of the contractual commitments for materials. This agreement, taken in connection with the one of June 30,1919, of similar import, covered all outstanding obligations for contracted material and resulted in the payment by the defendant of the contract price for all of said material and the delivery of the same to the defendant.
On February 26, 1919, the defendant outlined in a written statement its final proposition with reference to the adjustment and settlement of all outstanding obligations not covered in previous agreements resulting from the cancellation of the original contract. This statement we set out in haeo verba in Finding VII. The plaintiff accepted the terms of this proposition in all its detail except the item of anticipated profits. This single item it declined to accept, con *391 tending for a vastly greater allowance in this one respect. Therefore, we are in this case primarily concerned with this single issue. As to all others, with some rather minor exceptions, the parties have concluded their differences by contract.
The recent case of the Russell Motor Car Co. v. United States, 57 C. Cls. 464; 261 U. S. 514, we think disposes of this issue, and in our opinion disposes of it irrespective of mutual agreements following or preceding cancellation, wherein the item of anticipated profits is left open for decision. That they are not recoverable under the circumstances herein narrated seems obvious. The Supreme Court said, in disposing of the question:
“ This contention confuses the measure of damages for breach of contract with the rule of just compensation for the lawful taking of property by the power of eminent domain. In fixing just compensation the court must consider the value of the contract at the time of its cancellation, not what it would have produced by way of profits for the car company if it had been fully performed. It is evident that no prudent person desiring to acquire this contract would have paid for it the full amount which could be realized upon completion, leaving no chance of return to himself upon the investment or for the risk and labor incident to its performance. The contract, we must assume, was entered into with the prospect of its cancellation in view, since the statute was binding and must be read into the contract. The possible loss of profits, therefore, must be regarded as within the contemplation of the parties. The lower court was right in refusing to allow anticipated profits, and there being nothing in the findings to justify the contrary, we must accept the amount fixed on the basis of just compensation as adequate.”
As to the other items of expense which the plaintiff incurred, we, in a former opinion, gave judgment therefor. Judgment was awarded upon the only proof in the record then, as it is now, supporting an allowance predicated upon just compensation. We still believe they are allowable and adopt our former comments with respect to the same, as follows:
“ The plaintiff rearranged and enlarged its plant for the exclusive purpose of performing this contract. The proof shows it to have cost $1,900, an amount clearly allowable.
*392 An expense of $641.20 was incurred as premium paid for its contract bond. This, too, is allowable.
“ The plaintiff purchased a quantity of new machinery to meet the emergencies of this particular contract. It did not otherwise require the machinery, and suffered a proven loss of $600 depreciation thereon. This item will be included in the damages awarded.
“ The plaintiff purchased and had delivered to it $44,066.07 worth of materials. In acquiring and handling said materials it is entitled to a reasonable charge. This could not be done free of expense and the defendant conceded in its proffered offer of settlement two (2) per cent of the amount would be reasonable. This, amounting to $881.32, we think allowable. In addition to this, the plaintiff had outstanding subcontracts for material amounting to $108,990.53. All save one of these contracts were cancelled by the plaintiff and the material was not delivered, and hence not handled, but the expense incident to its purchase had been incurred and should be allowed. It was evidently not so expensive as the item above, and a reasonable allowance therefor would, in our opinion, be 1 per centum of the total amount, or $1,089.90.”
We have amended the findings and given in Finding X our judgment of the full amount of anticipated profits the plaintiff would have earned if allowed to complete the contract.
The former opinion of the court is withdrawn, and new findings this day filed, awarding judgment to the plaintiff in the sum of $5,112.42.
It is so ordered.
Graham, Judge; Hay, Judge; Dowkey, Judge; and Campbell, Chief Justice, concur.