Booth, Judge,
delivered the opinion of the court:
The Navy Department during the war needed and sought to obtain larger quantities of xylol. The source of supply was limited, and while the process of extracting xylol from naphtha was not in all respects perfected, it had been successfully done and xylol sold on the market. The Barrett Co., the plaintiff herein, was engaged in this identical busi- • ness, but was not in a position to meet the demands of the department because of limited facilities and much curtailed output. The department wanted at least 225,000 gallons of xylol a month. To this end negotiations were entered upon between the plaintiff and defendant, culminating on June 17, 1918, in a contract, by the terms of which the plaintiff was to enlarge its existing plant and construct a new one sufficient in size and equipment to distill the desired quantities of xylol from naphtha, the naphtha to be furnished by the defendant. The plaintiff was to estimate the cost of *355 such a plant and necessary equipment, and upon the approval of such an estimate the defendant agreed to advance to the plaintiff one-half the amount of the estimated cost at the time of the execution of the contract and the balance in two months thereafter. The entire construction work was to be completed and ready to distill xylol within five (5) months from the date of the agreement. The plant, as provided by the contract, in view of the payment of cost by the Government, was to become the property of the Government subject to its user and control for governmental purposes. The plaintiff agreed to offer 25 per centum of its original estimated cost for the plant when the contract expired, an offer the defendant had an option to accept or reject. The plaintiff submitted its estimated cost of plant, viz, (a) $192,547.50 as cost of the separate unit of construction and equipment, and (b) $60,773.32 as cost of the part of the plant necessary for the supply of electric power, steam, water, and light. This last item of cost was made necessary because of the additions to the existing plant in the above regard, and which obviously could not be definitely segregated from its then light, steam, etc., plant at the time in operation and sufficient in size and capacity to meet the plaintiff’s normal requirements. The above estimates, totaling $253,321.12, were approved. The money was paid in accord with the contract. It was accepted by the plaintiff and the construction program was proceeded with. The plaintiff incurred an additional expense of $84,459.53 in the course of the construction. The separate unit, i. e., the building and equipment, was completed about the middle of September, 1918, at a cost of $284,-882.66. The electric, steam, light, and water plant was near to half completion, at a cost of $52,897.63, when suspension orders were received.
The first item in suit is for the recovery of this additional expenditure. It is conceded that the case and the result is determined by the case of Russell Motor Car Co. v. United States, 261 U. S. 514. The judgment to be awarded must come within the rule as to just compensation. The right conferred upon the defendant by the act of June 15, 1917, 40 Stat. 182, was the specific power and authority to “ modify, suspend, cancel, or requisition ” any existing contract. *356 The contract herein was terminated November 18, 1918. However, by this act we do not understand that the granted authority to terminate in any particular varied the plain provisions of the existing contract. It is true the plaintiff, because of emergency conditions, determined to go beyond its express warrant of authority and incur added expense in the construction of the desired plant, but the contract itself contemplated no such increased expense, and there were manifestly no contractual obligations imposed upon the plaintiff to do what it did do. But, says the plaintiff, except for the exercise of the right of termination, the additional expense of construction would have been amortized in the total profits received upon completion, and therefore becomes a sum indispensably necessary to make the plaintiff whole. Apparently a sufficient answer is the assumption of such risk by the plaintiff. The right to terminate under the statute was part of the contract, and an unauthorized expense incurred depended for reimbursement upon the contingency of its exercise. What the plaintiff did, over and above the limitations of its contractual obligations and rights, it did of its own free will and assumed the hazards of recouping the same out of its final profits in the event the contract proceeded to conclusion.
It is not asserted that the contract supports the plaintiff’s contention. The contention is predicated entirely upon the theory of just compensation. We have been unable to resolve the issue in plaintiff’s favor. The just compensation to which the plaintiff is entitled, under the cases heretofore considered by the court, is limited to the stipulations of the contract, which by its terms imposed obligations and reciprocal rights and privileges upon the parties to the contract. Meyer Scale & Hardware Co. v. United States, 51 C. Cls.. 26; College Point Boat Corp. v. United States, 58 C. Cls. 380; affirmed by Supreme Court, January 19,1925, 267 U. S. 12. The contract fixed the status of the parties thereunder. If one goes beyond its terms it is difficult to perceive how financial obligations to pay more than is agreed to be paid can be inferred on the single theory that the defendant in the exercise of a lawful right terminated all further proceedings under the same and is held there *357 after to account for no more than just compensation. In view of the cases cited the just compensation to be awarded must be a loss lawfully resulting from a performance of the contract according to its terms, and may not embrace one occasioned by the contractor’s departure from the contract, although considered by the contractor at the time as expedient and in ‘promotion of the rapid completion of the whole contract. As a matter of fact, the plaintiff purchased the plant and equipment, paying therefor $110,000. The supplemental contract so states. No claim was made, so far as the record discloses, for this item of expense at the time of the sale, and if allowed this item would enable the plaintiff to obtain a modern distillation plant for $25,540.93, which admittedly cost the Government $253,321.12. The record exhibits the unusual state of affairs wherein a contractor, in the course of adjustment of losses due to a termination of its contract, purchases a plant from the Government, paying' therefor a very substantial sum, concluding the transaction without claim for a reduction of purchase price on account of increased expenditures. In many respects this transaction alone would be sufficient to preclude the recovery claimed for this item of loss. It was a final adjustment of losses with respect to this particular controversy. The plaintiff acquired the plant and paid the agreed purchase price, and in all ways conformed to the articles of agreement.
Finding X reflects the record on the subject of anticipated profits. The plaintiffs insist upon a judgment of sufficient proportions to cover anticipated profits. The contract provided (par. 7) that it should continue in full force and effect until 2,700,000 gallons of xylol shall have been delivered to E. I. du Pont de Nemours & Co. The contention is advanced that this is an unusual provision in an unusual contract, and is the equivalent of a guaranty that the contract shall survive until the full amount of xylol is delivered, and that granting the unquestioned right of cancellation under the statute, nevertheless this positive assurance as to time limit in the contract creates equities in favor of the plaintiff which may not be ignored in ascertaining just compensation. In other words, the measure of just compensation under the *358 peculiar state of affairs is to include anticipated profits. The Supreme Court in the case of Russell Motor Oar Go., supra, expressly determined adversely to plaintiff’s contention. We are unable to differentiate the rule there announced from the rule applicable to the record in this case. To concede to plaintiff the contention made with respect to this item would be giving to the authorized act of cancellation the legal effect of a breach of the contract by defendant and all its attendant consequences. It would, in effect, take from the statute all it wras designed to accomplish, and virtually entail upon the court the necessity of eliminating it from the contract. Quoting from the opinion of the Supreme Court relating to a contention identical with the one now advanced, the following was said: “ It is contended further that even if the action of the Secretary of the Navy was warranted by the statute the car company was nevertheless entitled to have included as just compensation its anticipated profits. This contention confuses the measure of damages for breach of contract with the rule of just compensation for the lawful taking of property by the power of eminent domain. In fixing just compensation the court must consider the value of the contract at the time of its cancellation, not what it would have produced by way of profits for the car company if it had been fully performed.” Russell Motor Car Co. v. United States, supra. With this established rule before us, we think the contention is devoid of merit.
The plaintiff is entitled to a judgment under Findings VI, VII, VIII, and IX for $10,995.08. The defendant seemingly concedes the allowance of the above items. In any event, we believe they come within the cases decided by the Supreme Court, and to this amount the plaintiff is justly entitled.
Judgment is awarded the plaintiff for $10,995.08. It is so ordered.
Grai-iam, Judge; Hat, Judge; Downey, Judge; and Campbell, Chief Justice, concur.